UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUMMIT ESTATE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTHCARE OF CALIFORNIA, INC., et al., <br><br> Defendants. | Case No. 17-CV-03871-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 6 |

Plaintiff Summit Estate, Inc. ("Plaintiff") sues Defendant Cigna Health and Life Insurance Company ("CHLIC") and Defendant Cigna Healthcare of California ("CHC") (collectively, "Defendants") for causes of action arising from Defendants' alleged under-payment of claims for reimbursement submitted by Plaintiff after Plaintiff provided substance abuse treatment services to patients who were insured by Defendants. *See* ECF No. 8 at 8–18. Before the Court is Defendants' motion to dismiss. ECF No. 6. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend.

## I.      BACKGROUND

### A. Factual Background

Plaintiff is a "residential substance abuse treatment facility" located in Los Gatos, California.  ECF No. 8 at 8.  Plaintiff alleges that within the past two years, "numerous patients [Plaintiff] treated were insured for substance abuse treatment services pursuant to health insurance plans/policies" that were "issued, underwritten and administered by Defendants."  *Id.* at 9.  Specifically, when those patients "sought covered substance abuse treatment" from Plaintiff, "Plaintiff [first] took reasonable steps to verify available benefits, including contacting Defendants . . . to verify insurance benefits." *Id.*  Then, upon contacting Defendants, Plaintiff contends that Plaintiff "was advised in all cases that the policies provided for and Defendants would pay for treatment at the usual, reasonable and customary rate."  *Id.*  Based on these representations, Plaintiff provided treatment to the patients and submitted claims for payment at the usual, customary, and reasonable rate ("UCR").  *Id.* at 10.  However, Plaintiff alleges that Defendants subsequently refused to pay Plaintiff at the UCR and instead "paid a different and significantly lower amount."[1]  *Id.*

---

[1] In support of Defendants' motion to dismiss, Defendants attached a declaration from William S. Jameson.  *See* ECF No. 6-1.  The declaration states that Jameson is "Managing Counsel in Cigna's Legal Department," and also quotes a pre-recorded message that, according to Jameson, was "automatically played . . . each time Plaintiff called Cigna to verify benefits."  *Id.* at 2.  Plaintiff submitted an objection to Jameson's declaration as an attachment to Plaintiff's opposition, arguing that it "should not be considered by the Court in deciding [Defendants'] Motion to Dismiss."  ECF No. 18-1 at 2.

Similarly, in support of its opposition, Plaintiff attached a declaration from Paul Ponomarenko.  *See* ECF No. 18-2.  The declaration states that Ponomarenko is President and CEO of Plaintiff, and also provides more details about Plaintiff's contacts with Defendants while verifying benefits with Defendants, Plaintiff's previous experiences with submitting claims to Defendants, and specific percentages representing the extent to which Defendants allegedly underpaid Plaintiff.  *Id.*  Notably, none of these details are alleged in Plaintiff's complaint.  *See* ECF No. 8 at 8–18.  Defendants objected to Ponomarenko's declaration in an attachment to Defendants' Reply.  *See* ECF No. 21-1.

A court cannot consider evidence outside the pleadings without converting the motion to dismiss into one for summary judgment and giving the opposing party an opportunity to respond.  *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).  There are only a few limited exceptions to this rule.  A court may consider: (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; and (3) matter that is judicially noticeable under Federal Rule of Evidence 201.  *See Ritchie*, 243 F.3d at 907–08.  Neither the Jameson Declaration in support of Defendants' motion to dismiss (to the extent that it quotes the pre-recorded message that Jameson contends was played every time Plaintiff contacted Defendants to verify benefits), nor the Ponomarenko Declaration in support of Plaintiff's opposition, falls into any of these categories.  Thus, the Court declines to consider the pre-recorded message and the Ponomarenko Declaration for purposes of ruling on

### B. Procedural History

On May 1, 2017, Plaintiff filed suit against Defendants in the Superior Court of Santa Clara County. *Id.* at 8–18. Plaintiff's complaint asserted ten state law causes of action against Defendants, including breach of contract; intentional misrepresentation; negligent misrepresentation; fraudulent concealment; negligent failure to disclose; promissory estoppel; "prohibitory injunctive relief"; quantum meruit; violation of the California's Unfair Competition Law ("UCL"); and breach of implied contract. *Id.* at 10–17.

On July 7, 2017, Defendants removed the case to this Court. ECF No. 1 ("Notice of Removal"). On July 14, 2017, Defendants moved to dismiss all ten causes of action. *See* ECF No. 6 ("Def. Mot."). On August 25, 2017, Plaintiff opposed Defendants' motion to dismiss. ECF No. 18 ("Pl. Opp."). On September 1, 2017, Defendants filed a Reply. ECF No. 21 ("Reply").

## II.    LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendants move to dismiss all of Plaintiff's claims. Defendants contend that all of Plaintiff's causes of action are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants also assert a number of arguments that apply only to specific claims. The Court first addresses the arguments that apply only to specific causes of action.

1    Then, the Court considers whether the causes of action that survive Defendants' claim-specific

2    arguments for dismissal are preempted by ERISA.

3         **A. Arguments Pertaining to Specific Causes of Action**

4              **1. Breach of Contract and Breach of Implied Contract**

5         Plaintiff alleges that either express or implied contracts were formed between Plaintiff and

6    Defendants when Plaintiff contacted Defendants to verify benefits and Defendants "advised in all

7    cases that the policies provided for and Defendants would pay for treatment" at the UCR.  ECF

8    No. 8 at 9.  Defendants raise three arguments for why Plaintiff has failed to state a claim for

9    breach of either express or implied contracts.  However, the Court finds none of these arguments

10   persuasive.

11        First, Defendants assert that Plaintiff's allegations are insufficient to plausibly suggest that

12   Plaintiff and Defendants entered into "separate agreement[s]" with each other that were distinct

13   from the policies under which Plaintiff's patients were insured.  Def. Mot. at 12.  Instead,

14   Defendants contend that Plaintiff's complaint alleges only that Defendants made certain

15   representations "concerning the terms of" the insurance policies that Plaintiff's patients had with

16   Defendants.  *Id.*  Further, Defendants cite *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*,

17   118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000), to support their argument that "[n]o contract, either

18   implied or oral, is created under" the circumstances alleged by Plaintiff.  Def. Mot. at 12.

19        Defendants' reliance on *Cedars Sinai* is unavailing.  Under California law, a contract

20   requires (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a

21   sufficient cause or consideration.  Cal. Civ. Code § 1550.  Here, defendants appear to contest the

22   consent element.  In order to satisfy the consent requirement, there must be "objective" and

23   "outward manifestations" that the parties intended to be bound by an agreement.  *Weddington*

24   *Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).  In *Cedars Sinai*, the court found that

25   an insurer's verification that a patient's insurance policy covered certain services could not give

26   rise to a binding contract because the insurer's "verification of coverage" could not be "viewed

27   objectively as exhibiting an intent to contract."  118 F. Supp. 2d at 1008.

28
Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

However, in the instant case, Plaintiff's complaint does not allege that Defendants merely verified coverage to Plaintiff. Instead, Plaintiff's complaint alleges that, "in all cases," Defendants told Plaintiff that "Defendants would pay for treatment at the usual, reasonable and customary rate." ECF No. 8 at 9. Thus, Plaintiff has alleged sufficient facts to plausibly suggest that Defendants exhibited outward conduct indicating Defendants' intent to contract with Plaintiff. *See Regents of Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (finding that a reasonable jury could conclude that insurer-defendants exhibited an intent to contract because "[u]nlike in *Cedars Sinai*, defendants in this case provided both verification of coverage *and explicit authorization* for the hospital stay" (emphasis added)); *see also Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 WL 6396517, at *6 (E.D. Cal. 2011) (finding that "in some instances, a contract may be created on an authorization call").

Moreover, contrary to Defendants' view, Plaintiff's complaint adequately alleges agreements between Defendants and Plaintiff that were separate from the policies under which Plaintiff's patients were insured. Concededly, Plaintiff's complaint does allege that Defendants made representations in communications with Plaintiff about the terms of those insurance policies by stating that "the policies provided for . . . treatment at the usual, reasonable and customary rate." ECF No. 8 at 9. However, Plaintiff's complaint *also* alleges that Defendants "advised in all cases that . . . Defendants would pay for treatment at the usual, reasonable and customary rate." *Id.* This second allegation is sufficient to plausibly suggest that in addition to making representations about the terms of the insurance policies that Defendants issued, Defendants specifically told Plaintiff that Defendants would reimburse for substance abuse treatment services at the usual, customary, and reasonable rate ("UCR").

Second, Defendants argue that "Plaintiff's causes of action for breach of implied contract and breach of oral contract are not sufficient" because "Plaintiff fails to plead with specificity the terms of the contract or the nature of any breach by" Defendants. Def. Mot. at 12. California law requires a contract to be pleaded either verbatim or "according to its legal intendment and effect." *Scolinos v. Kolts*, 37 Cal. App. 4th 635, 640 (1995). In order to plead a contract by its legal effect,

a plaintiff must "allege the substance of [the contract's] relevant terms." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006). Further, "[a]n oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words." *Scolinos*, 37 Cal. App. 4th at 640.

Here, the gravamen of Plaintiff's contract claims is that Plaintiff provided substance abuse treatment services to patients who were insured by Defendants with the understanding that Defendants would reimburse Plaintiff for the treatment at the UCR. ECF No. 8 at 9. Thus, Plaintiff's complaint sufficiently alleges the substance and general terms of the contract that Plaintiff alleges it entered into with Defendants—namely, that Plaintiff would provide substance abuse treatment services in exchange for reimbursement at the UCR. *See Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 616 (1993) (holding that allegations that a distributor of beauty products promised to supply a retailer with "hair care products" if the retailer "attended a training class and agreed to sell the" hair care products were sufficient to plead an oral contract).

Third, Defendants argue that at least one of Plaintiff's contract claims should be dismissed because "there cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." Def. Mot. at 13. In its opposition, Plaintiff contends that at the pleading stage, it should be permitted to alternatively plead both an express contract claim and an implied contract claim even though they are inconsistent theories. Pl. Opp. at 5. The Court agrees with Plaintiff. Federal Rule of Civil Procedure 8 explicitly allows Plaintiff to plead different theories of relief in the alternative, even if those theories are inconsistent. Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . A party may state as many separate claims or defenses as it has, regardless of consistency."). Thus, courts routinely allow plaintiffs to plead both express contract and implied contract theories, as long as those theories are pled in the alternative. *See, e.g.*, *SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6, 2012) ("While the allegations of the implied contract claim rely on the same allegations as the express contract claim, SA is entitled to plead different theories of recovery in the alternative."); *Philips Med. Capital, LLC v. Med.*

7

*Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1047 (N.D. Cal. 2007) ("Although Counter–Claimants may not ultimately prevail on their claim for [implied contract] if, it turns out, there is a valid express contract between the parties, Counter–Claimants may plead in the alternative."); *Doe v. John F Kennedy Univ.*, 2013 WL 4565061, at *8 (N.D. Cal. Aug. 27, 2013) ("Plaintiff may proceed with alternative claims at the pleading stage, but ultimately [Defendant] cannot be held liable for both breach of express contract and breach of implied contract on the same subject matter.").

Accordingly, Plaintiff's claims for breach of express contract and breach of implied contract survive Defendants' claim-specific arguments for dismissal. The Court will address whether these claims are preempted by ERISA below in Section III.B.

### 2. Intentional Misrepresentation, Negligent Misrepresentation, Fraudulent Concealment, and Negligent Failure to Disclose

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Defendants argue that Plaintiff's claims for intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and negligent failure to disclose should be dismissed because Plaintiff has failed to allege those causes of action with sufficient particularity under Rule

9(b). As an initial matter, the Ninth Circuit has held that Rule 9(b) does not apply to claims for negligent failure to disclose. *Vess*, 317 F.3d at 1106. Defendants make no other claim-specific arguments for dismissal of Plaintiff's negligent failure to disclose claim. Thus, Plaintiff's negligent failure to disclose claim survives Defendants' sole claim-specific argument for dismissal, and the Court will address whether this claim is preempted by ERISA below in Section III.B.

However, Plaintiff's intentional misrepresentation, negligent misrepresentation,[2] and fraudulent concealment causes of action are subject to Rule 9(b)'s heightened pleading requirements. Further, the Court agrees with Defendants that Plaintiff has failed to allege its intentional misrepresentation, negligent misrepresentation, and fraudulent concealment causes of action with sufficient particularity under Rule 9(b). As noted above, under Rule 9(b), Plaintiff must allege an account of the (1) time; (2) place; (3) specific content of the false representations; and (4) the identities of the parties to the misrepresentations. *Swartz*, 476 F.3d at 764. Plaintiff's complaint suffers from three flaws. First, Plaintiff does not identify with sufficient particularity when Defendants allegedly made their false representations. Instead, Plaintiff's complaint alleges only that Defendants made fraudulent representations to Plaintiff "within the past two years." ECF No. 8 at 11. Second, Plaintiff's complaint fails to identify with sufficient particularity the services about which Defendants allegedly made false representations. Although Plaintiff's complaint alleges that Defendants falsely stated that Defendants would pay for "covered substance abuse treatment" at the UCR, ECF No. 8 at 9, Plaintiff's complaint also alleges that Defendants violated California Health and Safety Code § 1374.72, *see id.* at 14, which requires a health plan's coverage for treatment of "severe mental illnesses" and "serious emotional disturbances of a child" to be under the same terms as the plan's coverage for "other medical conditions." Cal. Health & Safety Code § 1374.72(a). Plaintiff's complaint therefore suggests that Plaintiff

---

[2] Although "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, . . . most district courts in California hold that it does." *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, *7 (N.D. Cal. Sept. 17, 2012).

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

provided certain mental health services as well. As a result, it is unclear from Plaintiff's complaint about which services Defendants allegedly made false statements. Third, and finally, Plaintiff's complaint does not allege with sufficient particularity the parties to the misrepresentations. Specifically, the complaint fails to identify "by title and/or job responsibility" who made the false representations and to whom the false representations were made. *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 963, 1016 (C.D. Cal. 2015). In the instant case, Plaintiff's complaint fails to identify any of the individual parties to the alleged misrepresentations *at all*. Because of these deficiencies, Plaintiff's complaint fails to give Defendants sufficient "notice of the particular misconduct which is alleged [by Plaintiff] to constitute fraud." *Semegen*, 780 F.2d at 731.

Accordingly, Defendants' motion to dismiss Plaintiff's causes of action for intentional misrepresentation, negligent misrepresentation, and fraudulent concealment is GRANTED. Plaintiff, however, shall have leave to amend. It is possible that, after amendment, Plaintiff will be able to allege facts sufficient to satisfy Rule 9(b). *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. Promissory Estoppel

For its promissory estoppel cause of action, Plaintiff argues that Defendants should be "estopped from asserting any payment amount contrary to the representations made by Defendants" because (1) when Plaintiff contacted Defendants to verify benefits under certain insurance policies, Defendants represented to Plaintiff that the insurance policies provided for reimbursement of substance abuse treatment services at the UCR; and (2) Plaintiff relied upon Defendants' representations and provided treatment services based on those representations. *See* ECF No. 8 at 13.

"The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013). Defendants argue that

Plaintiff's promissory estoppel cause of action should be dismissed because Plaintiff's complaint fails to allege a "clear and unambiguous promise" by Defendants. Def. Mot. at 15. The Court agrees with Defendants. Importantly, Plaintiff's promissory estoppel claim is *not* based on Plaintiff's allegations that Defendants expressly told Plaintiff that Defendants would reimburse Plaintiff at the UCR. Instead, Plaintiff's promissory estoppel claim is based on Plaintiff's allegations that when Plaintiff contacted Defendants, Defendants told Plaintiff that certain insurance policies issued by Defendants provided for reimbursement of substance abuse treatment services at the UCR. Under California law, these representations by Defendants—which are merely representations about the terms of certain insurance policies—do not amount to a clear and unambiguous promise by Defendants to pay for substance abuse treatment services at the UCR. *See Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 204, 215 n.6 (2017) (holding that an insurer's representation that a patient was "insured, covered, and eligible for coverage . . . for the services to be rendered by" a health care provider under the patient's insurance policy did not constitute a clear and unambiguous promise by the insurer to pay for the services).

Therefore, Defendants' motion to dismiss Plaintiff's promissory estoppel cause of action is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a promissory estoppel cause of action. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 4. "Prohibitory Injunctive Relief"

In Plaintiff's cause of action for "prohibitory injunctive relief," Plaintiff alleges that Defendants "have engaged in a continuing pattern of conduct" in which (1) Defendants first "inform non-network substance abuse treatment providers like Plaintiff" that "substance abuse treatment services are authorized [by Defendants] to be paid" at the UCR; and (2) after Plaintiff and other providers provide those substance abuse treatment services, "Defendants pay only a

11

small fraction of the UCR and then negotiate in an attempt to get providers to accept much less." ECF No. 8 at 14. Plaintiff appears to assert that Plaintiff is entitled injunctive relief because, by engaging in this "continuing pattern of conduct," Defendants have violated (1) California Health and Safety Code § 1371.8; (2) California Health and Safety Code § 1371.37; and (3) California Health and Safety Code § 1374.72.

Defendants assert several grounds for dismissing Plaintiff's claim for prohibitory injunctive relief. Notably, in its opposition to Defendants' motion to dismiss, Plaintiff does not address any of the three statutory provisions on which Plaintiff's claim for prohibitory injunctive relief is based. Instead, Plaintiff's sole opposition to Defendants' motion to dismiss Plaintiff's claim for prohibitory injunctive relief is as follows:

> The California Supreme Court has made it clear that injunctive relief is an
> appropriate remedy when conduct constituting an unfair business practice is alleged
> by a private Plaintiff. *Sharon McGill v. Citibank N.A.*[,] 2 Cal. 5th 945, 959 (2017).

Pl. Opp. at 8. The case that Plaintiff cites involves the UCL and does not even mention, much less address, any of the three California Health and Safety Code provisions at issue. Therefore, Plaintiff's argument in opposition to Defendants' motion to dismiss Plaintiff's prohibitory injunctive relief claim is irrelevant. For the reasons discussed below, the Court agrees with Defendants that Plaintiff has failed to state a claim under any of the three California Health and Safety Code provisions mentioned in Plaintiff's complaint. Thus, Plaintiff has not shown that Plaintiff is entitled to injunctive relief based on violations of these provisions.

### a. California Health and Safety Code § 1371.8

California Health and Safety Code § 1371.8 provides that "[a] health care service plan that authorizes a specific type of treatment by a provider shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization for any reason." Again, Plaintiff alleges that on multiple occasions, Defendants informed Plaintiff that substance abuse treatment services were "authorized [by Defendants] to be paid" at the UCR, but later paid Plaintiff "only a small fraction" of the UCR. Defendants argue that this alleged conduct does not amount to rescission or modification of authorizations within the meaning of §

1371.8, *see* Def. Mot. at 16, and Plaintiff does not respond to Defendants' argument in Plaintiff's

opposition. *See* Pl. Opp. at 8. Again, Plaintiff's opposition consists solely of one non-responsive

sentence and a citation to a case that does not mention § 1371.8. *See id.*

Even assuming that Defendants' alleged conduct violates § 1371.8, Plaintiff has no remedy

under the statute because—as Defendants argue and as another court in this district has found—§

1371.8 does not provide Plaintiff with a private cause of action. *See* Def. Mot. at 17; *Stanford*

*Hosp. & Clinics v. Humana, Inc.*, 2015 WL 5590793, at *7–9 (N.D. Cal. Sep. 23, 2015). "A

violation of a state statute does not necessarily give rise to a private cause of action." *Lu v.*

*Hawaiian Gardens Casino, Inc.*, 236 P.2d 346, 348 (Cal. 2010). "Instead, whether a party has a

right to sue depends on whether the Legislature has manifested an intent to create such a private

cause of action under the statute." *Id.* (internal quotation marks and citation omitted). Such

legislative intent may be revealed through either (1) "clear, understandable, unmistakable terms,

which strongly and directly indicate that the Legislature intended to create a private cause of

action"; or (2) the statute's legislative history. *Id.* at 348–49 (internal quotation marks and citation

omitted).

As an initial matter, § 1371.8 was enacted as part of California's Knox-Keene Act, *see*

*Stanford Hosp.*, 2015 WL 5590793, at *3, and "the California Court of Appeal has observed that

private parties do not have a general power to enforce the Knox-Keene Act." *Cal. Pac. Reg'l*

*Med. Ctr. v. Global Excel Mgmt., Inc.*, 2013 WL 2436602, at *5 (N.D. Cal. June 4, 2013).

Instead, the California courts have recognized that the Department of Managed Health Care is

charged with enforcing the Knox-Keene Act. *See Blue Cross of Cal., Inc. v. Super. Ct.*, 180 Cal.

App. 4th 1237, 1250 (2009) (stating that "the Knox-Keene Act expressly authorized the

[Department of Managed Health Care] to enforce the statute and does not include a parallel

authorization for suits by private individuals"); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of*

*Cal., Inc.*, 94 Cal. App. 4th 151, 161 (2001) (stating that "any standing [plaintiff] has to seek

enforcement of section 1371 appears to be limited. [Plaintiff] does not have a general power to

enforce Knox-Keene. Instead, such power has been entrusted exclusively to the [Department of

13

Corporations] and now to the [Department of Managed Health Care], preempting even the common law powers of the Attorney General"); *see also Bell v. Blue Cross of Cal.*, 131 Cal. App. 4th 211, 215 (2005) ("The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care.").

With this background in mind, the Court, like the court in *Stanford Hospital*, does not find in § 1371.8 any "clear, understandable, unmistakable terms, which strongly and directly indicate that the Legislature intended to create a private cause of action." *Lu*, 236 P.2d at 348. Although § 1371.8 contains mandatory language stating that a provider "*shall* not rescind or modify" a previous authorization, there is no other language "strongly and directly indicat[ing]" that a private individual, as opposed to the Department of Managed Health Care, can enforce that mandate. *Id.* Plaintiff does not cite any authority or provide any arguments to the contrary.

Further, Plaintiff does not offer any legislative history in support of Plaintiff's position. By contrast, the court in *Stanford Hospital* reviewed the legislative history of § 1371.8 and found no indication that the California Legislature intended to provide a private right of action to enforce § 1371.8. 2015 WL 5590793, at *9. Specifically, the *Stanford Hospital* court observed that "[w]hile the legislative history indicates that § 1371.8 was enacted to protect providers and consumers, that is not the same as indicating that the Legislature clearly intended to create a private right of action for either providers or consumers" in light of the Department of Managed Health Care's role in enforcing the Knox-Keene Act. *Id.*

Additionally, the Court could not identify any authority affirmatively finding that § 1371.8 provides a private right of action. Although one case from this district allowed a private plaintiff to proceed past summary judgment on a § 1371.8 claim, the defendant in that case did not challenge the plaintiff's ability to enforce § 1371.8 as a private individual. *See Principal Fin. Grp.*, 412 F. Supp. 2d at 1047–49. Thus, the court in that case had no occasion to address the issue of whether § 1371.8 provides a private right of action. "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. Further, cases are not authority for propositions not considered." *McDowell and Craig v. City of*

1    *Santa Fe Springs*, 351 P.2d 344, 347 (Cal. 1960).

2         As a result, the Court agrees with the conclusion in *Stanford Hospital* that § 1371.8 does

3    not provide a private right of action. Further, because § 1371.8 does not provide a private right of

4    action, any attempt by Plaintiff to amend Plaintiff's claim for injunctive relief on the basis of a §

5    1371.8 violation would be futile. Thus, the Court GRANTS WITH PREJUDICE Defendant's

6    motion to dismiss Plaintiff's claim for "prohibitory injunctive relief" to the extent Plaintiff's claim

7    is premised on Defendant's alleged violation of § 1371.8. *See Leadsinger*, 512 F.3d at 532.

8         **b. California Health and Safety Code § 1371.37**

9         California Health and Safety Code § 1371.37 prohibits "health care service plan[s]" from

10   engaging in "unfair payment pattern[s]." Cal. Health & Safety Code § 1371.37(a). Section

11   1371.37 provides four definitions for "unfair payment pattern":

12       (1) Engaging in a demonstrable and unjust pattern, as defined by the department, of
             reviewing or processing complete and accurate claims that results in payment

13           delays.

14       (2) Engaging in a demonstrable and unjust pattern, as defined by the department, of
             reducing the amount of payment or denying complete and accurate claims.

15

16       (3) Failing on a repeated basis to pay the uncontested portions of a claim within the
             timeframes specified in Section 1371, 1371.1, or 1371.35.

17

18       (4) Failing on a repeated basis to automatically include the interest due on claims
             pursuant to Section 1371.

19   *Id.* § 1371.37(c)(1)–(4). Section 1371.37 also explicitly allows the director of the Department of

20   Managed Health Care to pursue certain enforcement remedies against a health plan "upon a final

21   determination by the director that [the] plan has engaged in an unfair payment pattern." *Id.* §

22   1371.37(d).

23        Defendants argue that Plaintiff fails to state a claim under § 1371.37 because like § 1371.8,

24   § 1371.37 does not provide a private right of action. Again, under California law, a state statute

25   provides a private right of action only if "the Legislature has manifested an intent to create such a

26   private cause of action" through either (1) "clear, understandable, unmistakable terms, which

27   strongly and directly indicate" an intent to provide a private right of action; or (2) legislative

28

15

history. *Lu*, 236 P.2d at 348-49 (internal quotation marks and citation omitted). Like § 1371.8, § 1371.37 is part of the Knox-Keene Act. *See Pac. Bay Recovery*, 12 Cal. App. 5th at 213. As stated above, California courts have observed that the Department of Managed Health Care is charged with enforcing the Knox-Keene Act, and that private individuals do not have the "general power to enforce the Knox-Keene Act." *Cal. Pac. Reg'l Med. Ctr.*, 2013 WL 2436602, at *5. Indeed, § 1371.37(d) expressly authorizes the director of the Department of Managed Health Care to bring certain enforcement actions against health plans that have violated § 1371.37. The remaining text of § 1371.37 does not appear to "strongly and directly indicate" that the California legislature intended to provide a private cause of action in § 1371.37, and Plaintiff does not support its position with any textual arguments or references to legislative history. Once again, in its opposition, Plaintiff offers only one non-responsive sentence of argument and a citation to a case about an unrelated statute in support of its claim for prohibitory injunctive relief.

However, the Court need not decide whether § 1371.37 confers a private right of action at this time. Even assuming that Plaintiff can bring a private cause of action based on a violation of § 1371.37, Plaintiff has failed to allege facts sufficient to plausibly suggest that Defendants violated § 1371.37. Again, Plaintiff alleges that on many occasions, Defendants told Plaintiff that substance abuse treatment services were "authorized [by Defendants] to be paid" at the UCR, but later paid Plaintiff a lower rate. ECF No. 8 at 14. Thus, Plaintiff appears to be asserting that Defendants engaged in an "unfair payment pattern" under § 1371.37(c)(2), which prohibits health plans from "engaging in a demonstrable and unjust pattern, as defined by the [Department of Managed Health Care], of reducing the amount of payment or denying complete and accurate claims." Cal. Health & Safety Code § 1371.37(c)(2). However, under the plain text of § 1371.37(c)(2), the only actionable patterns of payment reductions or claim denials under § 1371.37(c)(2) are those that have been "defined by the [Department of Managed Health Care]" to be "demonstrable and unjust." *Id.* Plaintiff has provided nothing to suggest that the Department of Managed Health Care has defined conduct like Defendant's alleged conduct to be a "demonstrable and unjust pattern . . . of reducing the amount of payment or denying complete and

16

accurate claims." As a result, Plaintiff has failed to state a claim under § 1371.37.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for "prohibitory injunctive relief" to the extent Plaintiff's claim is premised on Defendant's alleged violation of § 1371.37. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a claim under § 1371.37. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### c. California Health and Safety Code § 1374.72

The California Mental Health Parity Act, Cal. Health & Safety Code § 1374.72, requires "[e]very health care service plan contract . . . that provides hospital, medical, or surgical coverage" to "provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child . . . under the same terms and conditions applied to other medical conditions." Cal. Health & Safety Code § 1374.72(a).

Defendants move to dismiss Plaintiff's claim for injunctive relief based on § 1374.72 on two grounds. First, Defendants argue that "Plaintiff does not allege that it provides mental illness or mental health treatment, just that it is a substance abuse treatment provider." Def. Mot. at 17. Second, Defendants argue that "Plaintiff does not allege that [Defendants] refused to authorize claims for mental illness or mental health benefits—only that claims for substance abuse treatment were not paid as allegedly promised." *Id.* As discussed further below, the Court agrees with Defendants' first argument, and thus the Court need not consider Defendants' second argument.

A health plan runs afoul of § 1374.72 only if the plan's "terms and conditions" of coverage for "medically necessary treatment" of all "severe mental illnesses" and "serious emotional disturbances of a child" is different from the plan's "terms and conditions" of coverage for treatment of "other medical conditions." Cal. Health & Safety Code § 1374.72(a). Section 1374.72 defines "severe mental illnesses" to include: "(1) Schizophrenia[;] (2) Schizoaffective disorder[;] (3) Bipolar disorder (manic-depressive illness)[;] (4) Major depressive disorders[;] (5)

United States District Court
Northern District of California

Panic disorder[;] (6) Obsessive-compulsive disorder[;] (7) Pervasive developmental disorder or autism[;] (8) Anorexia nervosa[;] (9) Bulimia nervosa." *Id.* § 1374.72(d). Further, § 1374.72 provides that a child suffering from "serious emotional disturbances" "shall be defined as a child who (1) has one or more mental disorders as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, other than a primary substance use disorder or developmental disorder, that result in behavior inappropriate to the child's age according to expected developmental norms, and (2) who meets the criteria in paragraph (2) of subdivision (a) of Section 5600.3 of the Welfare and Institutions Code." *Id.* § 1374.72(e).

In its complaint, Plaintiff alleges only that Plaintiff provided "substance abuse treatment services," that Defendants told Plaintiff that Defendants would reimburse for those substance abuse treatment services at the UCR, and that Defendants subsequently paid a much lower rate. *See* ECF No. 8 at 8–9. Plaintiffs' allegations are not sufficient to plausibly suggest that Defendants' coverage of treatment for "severe mental illnesses" or "serious emotional disturbances of a child" differed from Defendants' coverage of other medical treatments.

First, Plaintiff does not allege that Plaintiff provided mental health treatment services. None of the nine "severe mental illnesses" listed in § 1374.72(d) mention substance abuse, and Plaintiff's complaint contains no indication that the substance abuse treatment services that Plaintiff rendered are related to any of those mental illnesses. Similarly, Plaintiff's complaint does not plausibly suggest that any of Plaintiff's substance abuse treatment services were for treatment of "serious emotional disturbances of a child"—especially in light of § 1374.72(e)'s exclusion of "primary substance abuse disorder[s]" from the statutory definition of "serious emotional disturbances of a child."

Second, Plaintiff's complaint contains no allegation that Defendants provided terms of coverage for mental health treatment different from that of other medical treatment. Again, a health plan violates § 1374.72 only if the plan's terms of coverage for treatment of "severe mental illnesses" and "serious emotional disturbances of a child" are different from the plan's terms of coverage for other medical treatments. Cal. Health & Safety Code § 1374.72(a). Plaintiff

18

provides no comparison of the difference in Defendants' terms of coverage for mental health treatment versus other medical treatment.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for "prohibitory injunctive relief" to the extent Plaintiff's claim is premised on Defendant's alleged violation of § 1374.72. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a claim under § 1374.72. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 5. Quantum Meruit

In Plaintiff's *quantum meruit* claim, Plaintiff alleges that Defendants "communicated to Plaintiff that . . . the claims [for substance abuse treatment services provided by Plaintiff] would be covered at the UCR," that these communications "induced to provide substance abuse treatment services," and that "Defendants have refused to pay the [] rate they represented would be paid, and instead have only paid a small fraction of the reasonable value of the services." ECF No. 8 at 15. Thus, Plaintiff argues that Plaintiff is entitled to "the remainder of the reasonable value of . . . the substance abuse treatment services provided by Plaintiff." *Id.*

Defendants move to dismiss Plaintiff's *quantum meruit* claim on two grounds. First, Defendants argue that "Plaintiff has not pled facts to establish that the [substance abuse] treatment was performed at [Defendant's] request." Def. Mot. at 18. Second, Defendants argue that Plaintiff has not alleged that the substance abuse services provided by Plaintiff "conferred any benefit on [Defendants]." *Id.* As discussed further below, the Court agrees with Defendants' first argument, and thus the Court need not consider Defendants' second argument.

"Under California law, a plaintiff can [assert a *quantum meruit* claim] by showing (1) that the plaintiff performed the services for the defendant; (2) that they were rendered at defendant's request; and (3) that they are unpaid." *Principal Fin. Grp.*, 412 F. Supp. 2d at 1046–47 (citing *Haggerty v. Warner*, 252 P.2d 373 (1953)). Here, Plaintiff does not allege that Defendants explicitly requested Plaintiff to provide substance abuse treatment services to the patients insured

19

under policies issued by Defendants. Instead, Plaintiff alleges that Plaintiff contacted Defendants

to "verify available benefits" under certain patients' insurance policies, and that Defendants

"advised in all cases that the policies provided for and Defendants would pay for treatment" at the

UCR. ECF No. 8 at 9. Even assuming that Defendants verified coverage and authorized Plaintiff

to provide substance abuse treatment services through these alleged representations, Plaintiffs

have not alleged enough facts to plausibly suggest that Defendants *requested* Plaintiff to render

those services because, as alleged in Plaintiff's complaint, Plaintiff initiated contact with

Defendants to verify coverage and seek authorization. *See Community Hosp. of the Monterey*

*Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp. 3d 1042, 1051–52 (N.D. Cal. 2015) ("Authorizing,

by definition, means 'to give legal authority' or 'to formally approve.' In the health insurance

context, it is the patient who firsts requests service in the form of treatment. Then, the provider . .

. must seek authorization to provide such treatment from the insurer . . . . No reasonable jury

could conclude that [provider] 'performed services at [insurer's] request,' when in fact [provider]

initiated contact with [insurer] as to authorization." (alterations adopted)); *see also Barlow*

*Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, 2016 WL 7626446, at *3 (C.D. Cal. Sep. 30,

2016) ("It is undisputed that Defendant did not request that Plaintiff provide C.S. with medical

services. Rather, C.S. requested medical services from Plaintiff, who then contacted Defendant to

verify C.S.'s coverage eligibility. The undisputed facts thus show that Plaintiff cannot establish

the third element of its quantum meruit claim." (citations omitted)).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's cause of action

for *quantum meruit*. The Court affords Plaintiff leave to amend because Plaintiff may be able to

allege sufficient facts to state a *quantum meruit* claim. *See Lopez*, 203 F.3d at 1127 (holding that

"a district court should grant leave to amend . . . unless it determines that the pleading could not

possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 6. UCL

Plaintiff alleges that Defendants violated the UCL. "The UCL establishes three varieties of

unfair competition—'acts or practices which are unlawful, or unfair, or fraudulent.'" *Flores v.*

20

*EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1117–18 (E.D. Cal. 2014). Defendants assert that Plaintiff's UCL claim fails for three reasons. First, Defendants argue that "Plaintiff's [c]omplaint does not state with reasonable particularity the facts supporting the statutory elements of [a UCL] violation." Def. Mot. at 20. Second, Defendants argue that "Plaintiff has not shown that it has standing" to sue under the UCL. *Id.* Third, Defendants argue that Plaintiff cannot seek equitable relief under the UCL because Plaintiff has failed to "allege inadequacy of legal remedies." *Id.* The Court need not address Defendants' first two arguments because, as discussed below, the Court finds that Plaintiff has failed to allege that Plaintiff's legal remedies are inadequate.

In seeking redress for a wrong, a litigant may obtain equitable or legal remedies. As this Court has stated, "[a] plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). Similarly, in *In re Ford Tailgate Litigation*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), the district court dismissed certain equitable relief claims and noted that, where an equitable relief claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." These statements in *Philips* and *In re Ford* are consistent with well-established U.S. Supreme Court and Ninth Circuit precedent: "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *accord Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law."). Thus, at the pleading stage, a complaint "must set forth facts to show the breach cannot be adequately compensated for in damages; failing this, it does not state a cause of action." 5 Witkin, *California Procedure* § 803 (5th ed. 2008).

In the instant case, Plaintiff can seek only equitable relief under the UCL because "[a]part from civil penalties, which are not at issue here, the UCL [] provide[s] for only equitable relief." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015). However, Plaintiff cannot seek relief under the UCL because Plaintiff has not alleged that

Plaintiff's legal remedies are inadequate. Specifically, it is undisputed that six of Plaintiff's other causes of action—for breach of express contract, breach of implied contract, intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and negligent failure to disclose—allow Plaintiff to recover monetary damages. Plaintiff, moreover, neither contends nor alleges facts suggesting that these six causes of action provide him an inadequate remedy. Thus, because Plaintiff's UCL cause of action "relies upon the same factual predicates as . . . [P]laintiff's legal causes of action"—that Defendants said they would reimburse Plaintiff for substance abuse treatment services at the UCR, but later paid a lower rate—it must be dismissed.

Accordingly, because Plaintiff does not allege facts indicating that Plaintiff does not have an adequate remedy at law, the Court GRANTS Defendant's motion to dismiss Plaintiff's UCL claim. Plaintiff, however, shall have leave to amend, as amendment would not be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

## B. ERISA Preemption

Having found that Plaintiff's claims for breach of express contract, breach of implied contract, and negligent failure to disclose survive Defendants' claim-specific arguments for dismissal, the Court next addresses whether these claims are preempted by ERISA. In their motion to dismiss, Defendants appear to argue that Plaintiff's claims are both (1) completely preempted under 29 U.S.C. § 1132(a); and (2) conflict preempted under 29 U.S.C. § 1144(a). The Court considers each argument in turn.

### 1. Complete Preemption Under 29 U.S.C. § 1132(a)

First, Defendants appear to argue that Plaintiff's claims should be dismissed because they are completely preempted under 29 U.S.C. § 1132(a). *See* Def. Mot. at 8–10. However, complete preemption under § 1132(a) is not a ground for dismissal for failure to state a claim. As the Ninth Circuit has explained, complete preemption under § 1132(a) is "really a jurisdictional rather than a preemption doctrine." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

(9th Cir. 2009) (internal quotation marks omitted). "[T]he doctrine of complete preemption under [§ 1132(a)]" was "created . . . as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a)." *Id.* Specifically, § 1132(a) preemption "is an exception to the otherwise applicable rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Id.* (internal quotation marks omitted). Thus, "if a complaint alleges only state-law claims"—like the complaint in the instant case—"and if these claims are entirely [preempted] by [§ 1132(a)], that complaint is converted from an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal quotation marks omitted). In short, complete preemption under § 1132(a) "confer[s] federal question jurisdiction on a federal district court." *Id.* Thus, although complete preemption under § 1132(a) can be used to invoke federal question jurisdiction, Defendants cannot use § 1132(a) as a ground for dismissing Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff has not filed a motion for remand and does not otherwise claim that the Court lacks jurisdiction to decide this case. Further, the Court need not decide whether Plaintiff's claims are completely preempted under § 1132(a) for jurisdictional purposes. Even if the Court does not have federal question jurisdiction over the instant case on the basis of § 1132(a), the Court finds that Defendants—who removed this case to federal court based on both federal question jurisdiction and diversity jurisdiction—have met their burden of showing that diversity jurisdiction exists. *See Lodi Memorial Hosp. Ass'n, Inc. v. Am. Pac. Corp.*, 2014 WL 5473540, at *4 (E.D. Cal. Oct. 20, 2014) ("[T]he removing party bears the burden of proving the existence of jurisdictional facts.").

Federal district courts have diversity jurisdiction over suits for more than $75,000 between "citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction exists only in "cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

First, Defendants have presented evidence indicating that the amount in controversy in this

23

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

action exceeds $75,000. Specifically, in support of their Notice of Removal, Defendants provided the declaration of William S. Jameson, "Managing Counsel in Cigna's Legal Department," who determined based on his review of Defendants' records that Defendants have "covered $932,681.12 on claims from Plaintiff that sought approximately $2,256,616.00, with a difference of approximately $1,323,934.88." ECF No. 1-2 ("Jameson Removal Decl.") ¶ 8. On the other hand, none of Plaintiff's pleadings or other filings suggests that the amount in controversy in the instant case does not exceed $75,000. Thus, Defendants have met their burden of establishing that the amount in controversy here exceeds the $75,000 minimum required for diversity jurisdiction.

Second, Defendants have provided evidence that the complete diversity requirement is satisfied. Plaintiff's complaint alleges that Plaintiff is a California citizen, *see* ECF No. 8 at 8, and Defendants' Notice of Removal states that Defendant CHC is a California citizen and that Defendant CHLIC is a citizen of Connecticut.[3] Notice of Removal ¶¶ 5–6. Although it appears at first glance that complete diversity is lacking because both Plaintiff and Defendant CHC are alleged to be California citizens, Defendants argue that CHC's citizenship does not impact diversity because CHC was fraudulently joined in this action. Notice of Removal ¶ 6. Specifically, Defendants argue that CHC "can have no liability in this case" because (1) Plaintiff alleges that Plaintiff is an out-of-network provider, *see* ECF No. 8 at 14; (2) "CHC only administers in-network claims"; and therefore (3) "CHC does not administer, nor could it have administered, the out-of-network claims or cases at issue in this lawsuit." Notice of Removal ¶ 5.

The Court finds that Defendants have met their burden of establishing that CHC was fraudulently joined. Where a plaintiff fails to state a cause of action against a non-diverse defendant, "and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent and removal is proper." *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir.2007) (quotation marks and citation omitted). In support of Defendants' argument that CHC

---

[3] Plaintiff's complaint does not allege the citizenship of either CHC or CHLIC. Instead, Plaintiff's complaint alleges only that CHC and CHLIC "are corporations authorized to do and doing insurance business in the County of Santa Clara, State of California." ECF No. 8 at 9.

could not have administered Plaintiff's claims for reimbursement that give rise to Plaintiff's causes of action in the instant case—and therefore cannot be held liable in this case—Defendants again refer to the declaration of William S. Jameson in support of their Notice of Removal. *See* Notice of Removal ¶ 5. That declaration explains that (1) CHC "is only licensed . . . to operate its [Health Maintenance Organization ("HMO")] business in the State of California"; (2) CHC's HMO plans do not cover services from out-of-network providers—meaning providers "who are not part of CHC's contracted HMO network in California"; (3) "Plaintiff is not part of CHC's HMO network in California"; and therefore (4) "CHC could not have insured or administered payment with respect to the claims at issue in this lawsuit—which are all out-of-network claims." Jameson Removal Decl. ¶ 3. Instead, Jameson's declaration states that CHLIC is the entity that administers claims from out-of-network providers like Plaintiff. *Id.* ¶ 4.

Plaintiff's complaint acknowledges that Plaintiff is an out-of-network provider, *see* ECF No. 8 at 14, and Plaintiff does not provide any facts that suggest that CHC administered the claims at issue in this case or that CHC can be held liable in any other way for the alleged under-payment of those claims. Indeed, as the Court noted above, Plaintiff has not filed a motion for remand and does not otherwise argue that the Court lacks jurisdiction to decide this action. Thus, Defendants have met their burden of showing that Plaintiff cannot state a cause of action against CHC. As a result, Defendants have adequately established that "the joinder of [CHC] is fraudulent and removal is proper."[4] *Gardner*, 508 F.3d at 561.

### 2. Conflict Preemption Under 29 U.S.C. § 1144(a)

Second, Defendants argue that all of Plaintiff's claims should be dismissed because they are conflict preempted under 29 U.S.C. § 1144(a). *See* Def. Mot. at 10–11. However, because the Court has already dismissed some of Plaintiff's causes of action on other grounds, the Court addresses only whether the surviving causes of action—namely, Plaintiff's claims for breach of express contract, breach of implied contract, and negligent failure to disclose—are conflict

---

[4] The parties should address whether CHC should remain in this case in their October 18, 2017 joint case management statement.

preempted under 29 U.S.C. § 1144(a).

Section 1144(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." "[T]he words 'relate to,' " however, "cannot be taken too literally." *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849 (9th Cir. 2002). "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.'" *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1005) (alteration omitted). Such an interpretation would "read the presumption against pre-emption out of the law," *id.*, and is "a result [that] no sensible person could have intended." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (20160 (internal quotation marks omitted).

As such, U.S. Supreme Court precedent "to date has described two categories of state laws that [§ 1144(a)] pre-empts." *Id.* "First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation, that 'reference' will result in pre-emption." *Id.* (internal quotation marks, citation, ellipses, and alterations omitted). "Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* (internal quotation marks and ellipses omitted).

Plaintiff's claims for breach of express contract, breach of implied contract, and negligent failure to disclose do not fall under either of these categories. First, as to the "reference to" prong, California contract and tort law do not "act exclusively upon ERISA plans." *Id.* Nor is "the existence of ERISA plans . . . essential to [their] operation." *Id.* Instead, California contract and tort law "are laws of general application, and do not focus exclusively (or, for that matter, even primarily) upon ERISA plan administration." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *49 (N.D. Cal. May 27, 2016).

Second, as to the "connection with" prong, the U.S. Supreme Court has advised courts to

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans" if the state law claims are allowed to proceed. *Gobeille*, 136 S. Ct. at 943 (internal quotation marks and citation omitted). The Ninth Circuit has utilized a "relationship test" to analyze the "connection with" prong. *Paulsen*, 559 F.3d at 1082. Under that test, "a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Id.*; *see also Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee."). In the instant case, Plaintiff brings its claims for breach of express contract, breach of implied contract, and negligent failure to disclose on Plaintiff's own behalf as a third-party health care provider.[5] The relationship between a health care provider and an insurance plan is not an "ERISA-regulated relationship." *Paulsen*, 559 F.3d at 1082. Indeed, the Ninth Circuit has stated that "where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), *no ERISA-governed relationship is implicated* and the claim is not preempted."

---

[5] Defendants point out that one part of Plaintiff's complaint alleges that Plaintiff has received assignments from its patients, which suggests that Plaintiff brings its claims not on Plaintiff's own behalf as a third-party health care provider, but as an assignee of Plaintiff's patients. Reply at 3. However, Plaintiff's causes of actions for breach of express contract, breach of implied contract, and negligent failure to disclose arise from communications between Defendants and *Plaintiff*, and not from communications between Defendants and Plaintiff's patients. Further, Plaintiff alleges that it received assignments from its patients only in the section of the complaint that sets forth Plaintiff's claim for "prohibitory injunctive relief." *See* ECF No. 8 at 14. Thus, it is clear that Plaintiff brings its breach of express contract, breach of implied contract, and negligent failure to disclose claims on Plaintiff's own behalf as a third-party health care provider, and not as an assignee of Plaintiff's patients. As a result, the Court need not consider the declaration that Plaintiff's counsel attached to Plaintiff's Opposition, in which Plaintiff's counsel states that the reference to assignments in Plaintiff's complaint was made in error. *See* ECF No. 18-3.

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

*Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) (emphasis added); *see The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (stating that § 1144(a) does not preempt "claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an *independent* entity claiming *damages*"). Thus, Plaintiff's causes of action for breach of express contract, breach of implied contract, and negligent failure to disclose do not have a forbidden "connection with" any ERISA plan.

As a result, Plaintiff's claims for breach of express contract, breach of implied contract, and negligent failure to disclose are not preempted under § 1144(a). Thus, the Court DENIES Defendants' motion to dismiss these claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. In particular:

1. Defendants' motion to dismiss Plaintiff's first cause of action, for breach of express contract, is DENIED.

2. Defendants' motion to dismiss Plaintiff's second cause of action, for intentional misrepresentation, is GRANTED with leave to amend.

3. Defendants' motion to dismiss Plaintiff's third cause of action, for negligent misrepresentation, is GRANTED with leave to amend.

4. Defendants' motion to dismiss Plaintiff's fourth cause of action, for fraudulent concealment, is GRANTED with leave to amend.

5. Defendants' motion to dismiss Plaintiff's fifth cause of action, for negligent failure to disclose, is DENIED.

6. Defendants' motion to dismiss Plaintiff's sixth cause of action, for promissory estoppel, is GRANTED with leave to amend.

7. Defendants' motion to dismiss Plaintiff's seventh cause of action, for "prohibitory injunctive relief," is GRANTED with prejudice to the extent Plaintiff's cause of action is

28

premised on a violation of California Health and Safety Code § 1371.8, and GRANTED with leave to amend to the extent Plaintiff's cause of action is premised on a violation of either California Health and Safety Code § 1371.37 or California Health and Safety Code § 1374.72.

8. Defendants' motion to dismiss Plaintiff's eight cause of action, for *quantum meruit*, is GRANTED with leave to amend.

9. Defendants' motion to dismiss Plaintiff's ninth cause of action, for violation of the UCL, is GRANTED with leave to amend.

10. Defendants' motion to dismiss Plaintiff's tenth cause of action, for breach of implied contract, is DENIED.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 10, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 17-CV-03871-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California